JONES WALDO HOLBROOK & MCDONOUGH, P.C.
JEFFREY W. SHIELDS (USB 2948) Pro Hac Vice Pending
jshields@joneswaldo.com
JESSICA P. WILDE (USB 11801) Pro Hac Vice Pending
jwilde@joneswaldo.com
170 South Main Street, Suite 1500
Salt Lake City, UT  84101
Telephone:  (801) 521-3200
Facsimile:  (801) 328-0537

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
EDWARD D. VOGEL, Cal. Bar No. 110081
evogel@sheppardmullin.com
J. BARRETT MARUM, Cal. Bar No. 228628
bmarum@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, California  92101-3598
Telephone:    619-338-6500
Facsimile:    619-234-3815


Attorneys for Plaintiff Richard D. Isbell

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## (SANTA ANA DIVISION)

| | |
|---|---|
| In re | Case No. 8:09-bk-23415-RK |
| DEBRA LEE MATLOSZ, | **COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF CERTAIN DEBTS** |
| Debtor. | |
| RICHARD D. ISBELL, an individual, | |
| Plaintiff, | Chapter 13 |
| v. | |
| DEBRA LEE MATLOSZ, an individual, | Hon. Robert Kwan |
| Defendant. | |

1  Richard D. Isbell (the **"Plaintiff"**), through counsel, complains of Debra Lee

2  Matlosz (the **"Debtor"** or the **"Defendant"**), and alleges as follows:

3  <u>**PARTIES, JURISDICTION AND VENUE**</u>

4  1.  Defendant is the debtor in the above-captioned chapter 13 bankruptcy case,

5  having filed a voluntary petition under chapter 13 of Title 11, U.S. Code (the "Bankruptcy

6  Code"), on December 2, 2009.  This Court has jurisdiction over the subject matter of and

7  parties to this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This action

8  arises under the Bankruptcy Code, and arises in and relates to the chapter 13 bankruptcy

9  case of Debtor.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I), (J),

10  and (O).  Venue is proper in this Court pursuant to 28 U.S.C. § 1409, as Debtor's

11  underlying bankruptcy case is pending before the Court.

12  2.  Plaintiff is an individual residing in Idaho.

13  3.  Defendant is an individual residing in California.

14  <u>**FACTUAL ALLEGATIONS**</u>

15  4.  Plaintiff's and Defendant's father, Richard W. Isbell, and mother, Lila Lee

16  Isbell, passed away in December 2005 and August 2006, respectively.

17  5.  The decedents Richard W. Isbell and Lila Lee Isbell (collectively the

18  **"Decedents"**) executed a Joint and Mutual Last Will and Testament, dated June 24, 1980

19  (the **"Will"**).  A copy of the Will is attached hereto as **Exhibit A**.

20  6.  The Will provides that upon the death of the first of the decedents to die, his

21  or her property goes to the survivor.

22  7.  The Will provides that upon the death of the survivor of the decedents, the

23  remainder of the estate shall be split equally between Plaintiff and Defendant.

24  8.  Thus, pursuant to the Will, when Ms. Isbell died in August 2006, all of her

25  property, including property that she had received from Mr. Isbell (after payment of taxes,

26  expenses, and administrative costs) was to pass in equal shares to Plaintiff and Defendant.

27

28

9.     On August 29, 2006, the Sixth Judicial District Court of Sevier County, State of Utah, in *In re Isbell,* Civil No. 063600032, appointed Plaintiff and Defendant as co-personal representatives of the Decedents' estate upon qualification and acceptance.   A copy of the Appointment of Personal Representatives is attached hereto as **Exhibit B.** Letters Testamentary were signed and issued to Plaintiff and Defendant on the same day. A copy of the Letters Testamentary is attached hereto as **Exhibit C.**

10.     In September 2006, Plaintiff and Defendant set up a checking account for the estate at Zions Bank in Richfield, Utah (the **"Zions Account"**).   Each of them was a signatory on the account.

11.     Because Defendant wanted a residential duplex property located in Salt Lake County, State of Utah (the **"Salt Lake Property"**), which was owned by the estate, Plaintiff and Defendant agreed that the Salt Lake Property would be conveyed to Defendant.   Plaintiff and Defendant agreed that this would be considered as part of Defendant's "one-half" of the estate.   Further, the parties agreed that Plaintiff would be issued a check in the amount of $172,000, which would be considered as part of Plaintiff's "one-half" of the estate.

12.     On September 20, 2006, Plaintiff and Defendant signed a Personal Representative's Deed in which the estate conveyed the Salt Lake Property to Defendant. The deed was recorded at the Salt Lake County Recorder's office on the same day.   The first Personal Representative's Deed and a revised Personal Representative's Deed (which was necessary in order to correct a spelling error) are attached hereto as **Exhibit D.**

13.     During November 2006, without the knowledge or consent of Plaintiff, Defendant borrowed $125,000 from World Savings Bank (the **"$125,000 Loan"**), and granted the bank a deed of trust on the Salt Lake Property as security for repayment of the $125,000 Loan.   The deed of trust was recorded at the Salt Lake County Recorder's office on November 9, 2006.   The deed of trust is attached hereto as **Exhibit E.**

14.    Then, as a result of Defendant's repeated demand that additional property be distributed to her, during April 2007 Plaintiff and Defendant agreed on which assets of the estate would be distributed to Plaintiff and which assets would be distributed to Defendant.

15.    The parties' agreement is set forth in a letter prepared and signed by Defendant (the **"Letter Agreement"**), which provides that the parties receive the following property:

      a.    Property to be distributed to Defendant:

           i.    The Decedents' home located at 58 North 300 West, Richfield, Utah;

           ii.    The Salt Lake Property;

           iii.    The property south of Wal-Mart known as "Indian Camp";

           iv.    The lot near 6th East and 3rd North;

           v.    The property in Wayne County, Utah; and

           vi.    A 2003 Buick LeSabre.

      b.    Property to be distributed to Plaintiff:

           i.    The pasture near the Glenwood Road in Richfield;

           ii.    The pasture on the Annabella Road in Richfield;

           iii.    The Fidelity estate account;

           iv.    The Zions Direct accounts;

           v.    A check for $172,000 drawn on the Zions Bank estate checking account; and

           vi.    A 1995 Chevrolet Pickup.

A copy of the Letter Agreement is attached hereto as **Exhibit F.**

16.    The Letter Agreement also provides the following:

There is an estate checking account at Zions Bank (055033799).   This account will be used to pay all estate expenses including estate tax if any. Following the completion of the settlement of the estate, any remaining monies in this account will be divided equally between Debra and Doug. Both agree that any expenses above the available funds in this account or after closure of this account will be paid ½ by each Debra and Doug.

17.    After the parties signed the Letter Agreement, Richard K. Chamberlain, counsel for the estate, prepared the documents and deeds to convey and distribute the property as set forth in the Letter Agreement.  Copies of three Deed[s] of Distribution by Personal Representative are attached hereto as **Exhibit G.**

18.    Titles to the properties that were supposed to be distributed to Defendant were conveyed to Defendant.

19.    Once deeds for the real properties were granted to Defendant and recorded, Defendant refused to sign any other documents, including the documents that were necessary to distribute to Plaintiff the investment accounts (Fidelity and Zions Direct accounts) that were supposed to be distributed to Plaintiff, pursuant to the Letter Agreement.

20.    Plaintiff was prevented from unilaterally distributing those assets to himself due to the requirement in the Utah Uniform Probate Code that all co-personal representatives concur in acts of estate administration.  *See* Utah Code Ann. § 75-3-716.

21.    During July 2007, Defendant demanded that the Richfield Post Office lock in a strong box all mail addressed to the estate or Decedents, and that it not be opened unless both Plaintiff and Defendant were present.  After Mr. Chamberlain intervened, the Post Office agreed to deliver all mail to Mr. Chamberlain and Mr. Chamberlain agreed to copy all of the mail for Defendant.  Defendant, however, never went to Mr. Chamberlain's office to pick up her copy of the mail.

22.    During June 2007, Defendant and Mr. Chamberlain met at Mr. Chamberlain's office in Richfield, Utah for the purpose of discussing the disposition of water rights held by the estate and the distribution of property as set forth in the Letter Agreement.  At the meeting, Defendant refused to discuss anything other than disposition of a piano held by the estate.

23.    Despite Plaintiff's and Mr. Chamberlain's repeated requests that Defendant comply with the Letter Agreement, Defendant refused to comply with the Letter

1  Agreement by signing the necessary documents to distribute property to Plaintiff and by

2  failing to pay Decedents' debs and the estate's administrative expenses.

3      24.    On May 6, 2008, Defendant wrote a check to herself for $52,528 out of the

4  Zions Account.

5      25.    Because the balance in the Zions Account was less than $4,000 after

6  Defendant's check cleared, a check in the amount of $8,687 that Plaintiff had made to the

7  IRS for the payment of income taxes was returned due to insufficient funds.

8      26.    The IRS issued repeated collection notices demanding that Plaintiff and

9  Defendant pay taxes, penalties, and interest.  Plaintiff loaned the estate $13,168.59 of his

10  own funds to pay the taxes, penalties, and interest owed to the IRS.

11      27.    As a result of Plaintiff's self-dealing and mismanagement of the estate, the

12  IRS assessed penalties and interest against the estate in the amount of $4,481.59.

13      28.    Defendant has refused to pay Decedents' debts and the estate's administrative

14  expenses, and has failed to reimburse Plaintiff for half of what Plaintiff has paid the IRS.

15      29.    Also, Defendant has since defaulted on her obligation to repay the $125,000

16  Loan.  A Notice of Default and Election to Sell has been recorded against the Salt Lake

17  Property.  A copy of the Notice of Default and Election to Sell is attached hereto as

18  **Exhibit H.**

19      30.    On January 8, 2009, Defendant issued three checks, from the Zions Account,

20  each in the amount of $1,500, for a total sum of $4,500.

21      31.    Since May 2007, Defendant has refused to allow Plaintiff access to estate

22  documents in Plaintiff's possession and control.

23      32.    Since May 2007, Defendant has refused to cooperate with Plaintiff in the

24  administration of the Decedents' estate.

25      33.    As a result of Defendant's failure to sign documents to effectuate the

26  distribution of property to Plaintiff, Plaintiff has been harmed by the loss in value in the

27

28

1  Fidelity and Zions Direct accounts. The total loss in value of these assets since May 2007

2  is in an amount no less than $300,000.

3      34.    As a result of Defendant writing checks from the Zions Account, Plaintiff

4  has been damaged in an amount no less than $57,028.

5      35.    As a result of Defendant's failure to pay taxes, penalties, and interest owed to

6  the IRS, Plaintiff has been damaged in an amount no less than $6,584.30.

7

8  ### FIRST CLAIM FOR RELIEF
   **(Nondischargeability Pursuant to 11 U.S.C. § 523(a)(2)(A))**

9

10      36.    By this reference, Plaintiff incorporates all of the averments set forth above.

11      37.    During April 2007, Defendant represented to Plaintiff that Plaintiff would

12  receive, as his share of the estate, the following property:

13          i.    The pasture near the Glenwood Road in Richfield, Utah;

14          ii.    The pasture on the Annabella Road in Richfield;

15          iii.    The Fidelity estate account;

16          iv.    The Zions Direct accounts;

17          v.    A check for $172,000 drawn on the Zions Bank estate checking

18              account; and

19          vi.    A 1995 Chevrolet Pickup.

20      38.    Defendant also represented that she would agree to pay half of the estate

21  expenses out of the Zions Account.

22      39.    Defendant's representations to the Plaintiff were false.

23      40.    Defendant did not intend to distribute the foregoing property to Plaintiff.

24      41.    Defendant made the representations regarding the distribution of property

25  and payment of estate expenses for the purpose of inducing Plaintiff to sign the appropriate

26  documents and work with Mr. Chamberlain so that Plaintiff could obtain the estate

27

28

1  property that she wanted and so that she could receive a share of the estate that was in

2  excess of the one-half to which she was entitled.

3      42.    Plaintiff relied on the representations made by Defendant during April 2007.

4      43.    Plaintiff acted reasonably by relying on Defendant's representations when

5  Plaintiff agreed to the terms under the Letter Agreement and when Plaintiff signed certain

6  documents so that Defendant would receive the property to which she was entitled under

7  the Letter Agreement.

8      44.    Plaintiff has suffered damages as a result of Defendant's fraudulent

9  representations in an amount to be proven at trial, which exceeds $535,612.30.

10     45.    Pursuant to Section 523(a)(2)(A), a discharge under Section 727 "does not

11  discharge an individual debtor from any debt . . . (2) for money, property, services, or an

12  extension, renewal, or refinancing of credit, to the extent obtained, by – (2) false pretenses,

13  a false representation, or actual fraud, other than a statement respecting the debtor's or an

14  insider's financial condition . . . ."

15     46.    Defendant's acts in her dealings with Plaintiff in connection with the

16  administration of the Decedents' estate fall within the exception to discharge of Section

17  523(a)(2)(A), and as such, this Court should find and declare that Defendant's obligations

18  owed to Plaintiff are non-dischargeable.

19

20              **SECOND CLAIM FOR RELIEF**
          **(Nondischargeability Pursuant to 11 U.S.C. § 523(a)(4))**

21

22     47.    By this reference, Plaintiff incorporates all of the averments set forth above.

23     48.    As a personal representative of the Decedents' estate, Defendant is a

24  "fiduciary who shall observe the standard of care applicable to trustees as described in

25  Section 75-7-902."   Utah Code Ann. § 75-3-703(1), a copy of which is attached as

26  **Exhibit I**.

27

28

49.    As a personal representative, Plaintiff is:

. . . under a duty to settle and distribute the estate of the decedent[s] in accordance with the terms of [the] probated and effective will and this code [Utah Uniform Probate Code] and as expeditiously and efficiently as is consistent with the best interests of the estate.

Utah Code Ann. § 75-3-703(1).

50.    Further, Plaintiff is required to "proceed expeditiously with the settlement and distribution of . . . [the decedents'] estate . . . ." Utah Code Ann. § 75-3-704, a copy of which is attached as **Exhibit J**.

51.    Under the Letter Agreement, the Fidelity and Zions Direct accounts should have been distributed to Plaintiff during May 2007, when the three additional parcels of real property were distributed to Defendant.

52.    Plaintiff was prevented from unilaterally distributing those assets to himself due to the requirement in the Utah Uniform Probate Code that all co-personal representatives concur in acts of estate administration. Utah Code Ann. § 75-3-716, a copy of which is attached as **Exhibit K**.

53.    Defendant breached her fiduciary duty by refusing to distribute the property that was required to be distributed to Plaintiff under the Letter Agreement, including the Fidelity and Zions Direct accounts.

54.    As a result of Defendant's breach of fiduciary duty, Plaintiff has been harmed by the loss in value to the Fidelity and Zions Direct accounts.

55.    Defendant breached her fiduciary duty by engaging in self-dealing and mismanagement of the estate.

56.    Defendant breached her fiduciary duty by not paying the Decedent's debts or the estate's administrative expenses.

57.    Defendant breached her fiduciary duty by writing checks to herself from the Zions Account without consulting with Plaintiff.

58.    Defendant breached her fiduciary duty by not distributing the property that was required to be distributed to Plaintiff under the Letter Agreement, including cash in the amount of $172,000.

59.    Plaintiff has suffered damages as a result of Defendant's willful and persistent breaches of Defendant's fiduciary duties in an amount to be proven at trial, which exceeds $535,612.30.

60.    Under Utah Code Ann. § 75-3-711, "a personal representative is liable to interested persons for damage or loss resulting from breach of [her] fiduciary duty[.]"  A copy of Utah Code Ann. § 75-3-711 is attached as **Exhibit L**.

61.    Pursuant to Section 523(a)(4), a discharge under Section 727 of the Bankruptcy Code "does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ."

62.    Defendant's acts in her dealings with Plaintiff in connection with the administration of the Decedents' estate fall within the exception to discharge of Section 523(a)(4) of the Bankruptcy Code, and as such, this Court should find and declare that Defendant's obligations owed to Plaintiff are non-dischargeable.

### THIRD CLAIM FOR RELIEF
### (Nondischargeability Pursuant to 11 U.S.C. § 523(a)(6))

63.    By this reference, Plaintiff incorporates all of the averments set forth above.

64.    Defendant knowingly, intentionally, and wrongfully interfered with property belonging to Plaintiff, including the Fidelity and Zions Direct accounts and cash in the amount of $172,000.

65.    Defendant's interference with the property belonging to Plaintiff deprived Plaintiff of the use and possession of such property.

66.    Defendant's actions constitute willful and malicious interference with property rightfully belonging to Plaintiff.

67. Defendant's actions were done without lawful justification or authorization from Plaintiff.

68. Defendant willfully and maliciously intended to permanently deprive, and in fact did deprive, Plaintiff of Plaintiff's property.

69. By failing to sign documents that would effectuate the distribution of property to Plaintiff, Defendant exercised control over such property with the intent to injure Plaintiff's interest in such property.

70. By taking funds from the Zions Account, Defendant exercised control over such property with the intent to injure Plaintiff's interest in such property.

71. By failing to deliver Plaintiff $172,000, Defendant exercised control over this amount of money belonging to Plaintiff.

72. Defendant's actions caused a "willful and malicious injury" to Plaintiff and his property.

73. Plaintiff has suffered damages as a result of Defendant's willful and malicious conversion of property belonging to Plaintiff in an amount to be proven at trial, which exceeds $535,612.30.

74. Pursuant to Section 523(a)(6), a discharge under Section 727 "does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or the property of another entity . . . ."

75. Defendant's acts in her dealings with Plaintiff in connection with the administration of the Decedents' estate fall within the exception to discharge of Section 523(a)(6), and as such, this Court should find and declare that Defendant's obligations owed to Plaintiff are non-dischargeable.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Richard D. Isbell demands judgment in his favor against Debra Lee Matlosz as follows:

1.      For an amount to be proven at trial, but in no event less than $535,612.30;

2.      For a declaration that Debtor's debts and obligations owed to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (4), and (6);

3.      For an award of attorneys' fees and costs incurred by Plaintiff, to the extent allowed by law, including any costs of collection, and a declaration that those attorneys' fees and costs are likewise nondischargeable; and

4.      For such other and further relief as the Court deems just and equitable under the circumstances.

Dated:  March 8, 2010

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
By

_____
/s/ J. Barrett Marum
J. BARRETT MARUM

Attorneys for Plaintiff Richard D. Isbell

JOINT AND MUTUAL LAST WILL AND TESTAMENT

OF

RICHARD W. ISBELL and LILA LEE C. ISBELL

Husband and Wife

\* \* \* \* \* \* \* \* \* \* \* \* \*

KNOW ALL MEN BY THESE PRESENTS:

That we, RICHARD W. ISBELL and LILA LEE C. ISBELL, being husband and wife, knowing the objects of our bounty and not acting under any menace, fraud, or undue influence, do hereby and by these presents make, publish, and declare this instrument as and to be our Last Will and Testament hereby revoking any and all Wills and Codicils heretofore made by us at any time.

### FIRST

We, and each of us do hereby appoint the other to act as our Personal Representative to serve without bond. The survivor of us, does hereby nominate and appoint Richard Douglas Isbell and Debra Lee Isbell Evans, our children, to act as the joint Personal Representatives of the  Last Will and Testament of the survivor of us, also to serve without bond.

### SECOND

We hereby direct our Personal Representative to pay all of our expenses of last illness, funeral and burial as soon after our demise as is practicable.

### THIRD

Each of us does hereby leave to the other all of our property and estate of whatever kind and wheresoever located and all property in which we have any power or right of distribution concerning at the time of our death; that is to say Richard W. Isbell hereby leaves, devises and bequeaths all of i

LAW OFFICES
OLSEN AND CHAMBERLAIN
76 SOUTH MAIN
RICHFIELD, UTAH 84701

EX. A
P. 13

- 2 -

## FOURTH

We desire to dispose of certain personal property effective upon the death of the survivor of us and we or the survivor of us shall list such property on a separate sheet of paper directing its distribution to the recipient(s) named to which we or the survivor of us shall sign and which shall have the effect of a specific devise of said items to property named and direct that they may be taken by such recipient(s) without court administration inventory, appraisement or other action by the Personal Representative.

## FIFTH

Upon the death of the survivor of us then we direct that there shall be devised and distributed all the rest, residue and remainder of our estate, including land, improvements, real property, personal property and mixed real and personal property, savings and checking accounts, bonds, stocks, and securities, household furniture, equipment, supplies, vehicles and personal items not otherwise disposed of in a separate list as provided in the preceding paragraph, we give in equal shares, share and share alike, to Richard Douglas Isbell one-half (1/2) and Debra Lee Isbell Evans one-half (1/2).

We further direct that should one of our children not be surviving us at the time of our death then the share that that child would have taken, were it not for his or her prior death, shall be bequeathed, devised, left and distributed to his or her lineal descendants per stirpes and not per capita.

EX. A
P. 14

IN WITNESS WHEREOF, we have made, published and

LAW OFFICES
OLSEN AND CHAMBERLAIN
76 SOUTH MAIN
RICHFIELD, UTAH 84701

- 3 -

On this _294_ day of _____ June _____, 1980,
the foregoing instrument, consisting of three (3) pages,
including this page, was in the presence of us, and each of
us, made, signed, published and declared by the TESTATORS,
RICHARD W. ISBELL and LILA LEE C. ISBELL, as and to be
their Last Will and Testament, who in the sight and presence
of each other, do hereby subscribe our names as attesting
witnesses, which said Last Will and Testament was executed
by the TESTATORS in our sight and in our presence and
declared by said TESTATORS to be their Last Will and Testament,
they requesting that we act as subscribing witnesses and
we, and each of us, do hereby certify and declare that in
our opinion the TESTATORS are of sound and disposing mind
and memory and not acting under any menace, fraud, or undue
influence.

_Michelle Ware_

Address: _Monroe, Utah_

_Carol K. Quigley_

Address: _Richfield, Utah_

WE, RICHARD W. ISBELL and LILA LEE C. ISBELL, the
TESTATORS, sign our names to this instrument, this _294_
day of _____ June _____, 1980, and being first duly sworn, do
hereby declare to the undersigned authority that we sign
and execute this instrument as our Last Will and Testament
and we sign it willingly; that we execute it as our free
and voluntary act for the purposes therein expressed and

LAW OFFICES
OLSEN AND CHAMBERLAIN
76 SOUTH MAIN
RICHFIELD, UTAH 84701

- 4 -

WE, _Michelle Ware_ and _Richard K. Chamberlain_ the witnesses, sign our names to this instrument, being first duly sworn, and do hereby declare to the undersigned authority that the TESTATORS sign and execute this instrument as their Last Will and Testament and they sign it willingly and each of us, in the presence and hearing of the TESTATORS and of each other, hereby sign this Will as witnesses to the TESTATORS' signing, and that to the best of our knowledge the TESTATORS are eighteen years of age or older, of sound mind, and under no constraint or undue influence.

_Michelle Ware_

_Richard L. Chamberlain_

STATE OF UTAH     )
                : SS.
COUNTY OF SEVIER  )

Subscribed, sworn to and acknowledged before me by RICHARD W. ISBELL and LILA LEE C. ISBELL, the TESTATORS, and subscribed and sworn to before me by _Michelle Ware_ and _Richard K. Chamberlain_, witnesses this _24th_ day of _____ June _____ 1980.

_Glenda L. Nielson_
Notary Public

Residing At:  Richfield, Utah

My Commission Expires: 7-10-83

LAW OFFICES
OLSEN AND CHAMBERLAIN
76 SOUTH MAIN
RICHFIELD, UTAH 84701

EX. A
P. 16

RICHARD K. CHAMBERLAIN, NO. 0609
ATTORNEY FOR PETITIONER
225 NORTH 100 EAST
RICHFIELD, UTAH 84701
TELEPHONE: (435) 896-4461

IN THE SIXTH JUDICIAL DISTRICT COURT OF SEVIER COUNTY,

STATE OF UTAH

* * * * * * *

| | |
|---|---|
| IN THE MATTER OF THE ESTATE ) | **APPOINTMENT OF** |
| : | **PERSONAL REPRESENTATIVES** |
| OF ) | |
| : | |
| RICHARD W ISBELL and LILA LEE ) | |
| ISBELL, : | |
| ) | |
| : | |
| Deceased. : | Probate No. 063600032 |

* * * * * * * * * * * * * * * * *

Upon consideration of the Application for Informal Probate of Will and Informal

Appointment of Personal Representatives, filed by Richard Douglas Isbell and Debra Lee Isbell

Lithgow Matlosz on August 23, 2006 the Registrar finds that:

1.    Any required notice has been given or waived.

2.    The application is complete and complies in all respects with the requirements of the

Utah Uniform Probate Code.

3.    The applicable time period within which no action on the application can be taken

has elapsed.

THEREFORE,

1.    The will of the decedent, dated June 24, 1980 is hereby informally probated.

2.    Richard Douglas Isbell and Debra Lee Isbell Lithgow Matlosz are hereby informally

appointed as Joint Personal Representatives of the decedents, to act without bond.

3.    Upon qualification and acceptance, Letters Testamentary shall be issued to the said

Personal Representatives.

DATED this __29th__ day of August, 2006.

_____
District Judge

LAW OFFICES
CHAMBERLAIN ASSOCIATES
228 NORTH 100 EAST
RICHFIELD, UTAH 84701

RICHARD K. CHAMBERLAIN, NO. 0609
ATTORNEY FOR PETITIONER
225 NORTH 100 EAST
RICHFIELD, UTAH 84701
TELEPHONE: (435) 896-4461

IN THE SIXTH JUDICIAL DISTRICT COURT OF SEVIER COUNTY,

STATE OF UTAH

* * * * * * *

| | |
|---|---|
| IN THE MATTER OF THE ESTATE | **LETTERS TESTAMENTARY** |
| OF | |
| RICHARD W ISBELL and LILA LEE ISBELL, | |
| Deceased. | Probate No. 063600032 |

* * * * * * * * * * * * * * * * * *

1.    Richard Douglas Isbell and Debra Lee Isbell Lithgow Matloszi were duly appointed and qualified as Joint Personal Representatives of the above-named decedents on the _____ day of August, 2006, by the Court with all authority pertaining thereto.

2.    Administration of the estate is unsupervised.

These Letters are issued to evidence the appointment, qualification, and authority of the said Personal Representatives.

WITNESS my signature and the Seal of the Court, this 29th day of August, 2006.

_____
District Judge



9851118
09/20/2006 04:25 PM $12.00
Book - 9353 Pg - 8372-8373
GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
DEBRA ISBELL MATLOSZ
11352 REAGAN ST
LOS ALAMITOS CA 90720
BY: KLD, DEPUTY - WI 2 P.

When recorded, mail to:

*Debra Matlosz*
*11352 Reagan Street*
*Los Alamitos, Ca 90720*

## PERSONAL REPRESENTATIVE'S DEED

This Deed is made by *Richard Douglas Isbell and Debra Lee Isbell*
*Lithgow Matlosz*
as personal representatives of the estate of *Richard W Isbell and Lila Lee Isbell*,
deceased, Grantors, to
*Debra Lee Isbell Matlosz*                , Grantee.

Whereas, Grantors are the qualified personal representatives of said estate, filed as
Probate Number *06 3600032*, in *Sevier*                County, Utah;

Therefore, for valuable consideration received, Grantors quit-claim, transfer, and convey
to _____, Grantee,
the real property located in SALT LAKE County, Utah, more particularly described as follows:

*COM. E .405 FT & S 12 FT FR NW COR LOT*
*15, BLK 22, TEN AC PLAT A, BIG FIELD*
*SUR; S 160.26 .FT; E 74 FT; N 160.26*
*FT M OR L; W 74 FT TO BEG.*

Executed this *20* day of September, 2006. *16-32-278-029-0000*

*Debra Lee Isbell Matlosz*
Personal Representative of the estate of
~~Debra Lee Isbell~~ *Richard W & Lila*, deceased
*Lee Isbell*

*Richard Isbell*
Personal Representative of the estate of
*Richard Isbell*                , deceased
*Richard W & Lila Lee Isbell*

State of  *UTAH*                )

County of _SALT LAKE_  )
　　　　　　　　　　　　　:ss
　　　　　　　　　　　　　)

　　　The forgoing instrument was acknowledged before me the _20th_ day of September,
2006, by _DEBRA LEE ISBELL MATLOSZ & RICHARD DOUGLAS_
_ISBELL_
Personal Representatives of the estate of _RICHARD W & LILA LEE ISBELL_ , deceased.



Notary Public

```
NOTARY PUBLIC
PENNY L. DAVIS
2001 So. State St. #S-2200
Salt Lake City, Utah 84190-1050
My Commission Expires
September 17, 2007
STATE OF UTAH
```

EX. D
P. 21

BK 9353 PG 8373　_PAGE 2 OF_

9892466
10/30/2006 4:55:00 PM $14.00
Book - 9373 Pg - 3267-3269
Gary W. Ott
Recorder, Salt Lake County, UT
INWEST TITLE SERVICES
BY: eCASH, DEPUTY - EF 3 P.

WHEN RECORDED MAIL TO:
DEBRA MATLOSZ
11352 REAGAN STREET
LOS ALAMITOS, CA 90720

SPACE ABOVE THIS LINE FOR RECORDERS USE ONLY _____
RECORDED AT THE REQUEST OF INWEST TITLE SERVICES, INC. ORDER # 113567
MAIL TAX NOTICE TO: DEBRA MATLOSZ

# PERSONAL REPRESENTATIVE'S DEED

THIS DEED, MADE BY **RICHARD DOUGLAS ISBELL AND DEBRA LEE ISBELL LITHGOW MATLOSZ** ALSO **INADVERTENTLY KNOWN AS DEBRA LEE ISBELL LITHGOW MATLOSZL**, AS JOINT PERSONAL REPRESENTATIVE OF THE ESTATE OF **RICHARD W ISBELL AND LILA LEE ISBELL**, BOTH DECEASED, HEREBY CONVEY AND WARRANT TO

**DEBRA LEE ISBELL MATLOSZ**

GRANTEE, OF LOS ALAMITOS, STATE OF CALIFORNIA.

FOR THE SUM OF TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION,

WHEREAS GRANTORS ARE THE DULY APPOINTED AND QUALIFIED JOINT PERSONAL REPRESENTATIVES OF SAID ESTATE, FILED AS PROBATE CASE NUMBER **063600032**, IN THE SIXTH JUDICIAL DISTRICT COURT IN AND FOR THE COUNTY OF SEVIER, STATE OF UTAH.

THE FOLLOWING DESCRIBED TRACT OF LAND IN <u>SALT LAKE COUNTY</u>, STATE OF UTAH:

**(TAX SERIAL NO. 16-32-278-029)**

**See Attached Exhibit "A"**

TOGETHER WITH ALL APPURTENANCES THEREWITH AND SUBJECT TO EASEMENTS, RESTRICTIONS, ENCUMBRANCES AND RIGHTS OF WAY OF RECORD, AND TAXES FOR THE YEAR 2006 AND THEREAFTER.

WITNESS, THE HAND(S) OF SAID GRANTOR(S), THIS 16 DAY OF October, 2006.

SIGNED IN THE PRESENCE OF      )
     ) *Debra Lee Isbell Lithgow Matlosz*
     ) **DEBRA LEE ISBELL LITHGOW MATLOSZ**
     ( ALSO KNOWN AS DEBRA LEE ISBELL MATLOSZ
     ) ALSO KNOWN AS DEBRA LEE ISBELL LITHGOW MATLOSZL

STATE OF CALIFORNIA      )
     :SS
COUNTY OF <u>Los Angeles</u>      )

ON October 16, 2006, PERSONALLY APPEARED BEFORE ME, **DEBRA LEE ISBELL LITHGOW MATLOSZ** ALSO KNOWN AS DEBRA LEE ISBELL MATLOSZ ALSO KNOWN AS DEBRA LEE ISBELL LITHGOW MATLOSZL, AS A JOINT PERSONAL REPRESENTATIVE OF THE ESTATE AFORMENTIONED, **DEBRA LEE ISBELL LITHGOW MATLOSZ** DULY ACKNOWLEDGED TO ME THAT SHE EXECUTED THE SAME.



PENNY S. MAMMANO
Commission # 1390663
Notary Public - California
Orange County
My Comm. Expires Dec 17, 2006

NOTARY PUBLIC

1

EX. D
P. 22

(    **RICHARD DOUGLAS ISBELL**
)
(

STATE OF IDAHO

         :SS    )

COUNTY OF _____    )

ON October 16, 2006,  PERSONALLY APPEARED BEFORE ME, **RICHARD DOUGLAS ISBELL**, AS A JOINT PERSONAL REPRESENTATIVE OF THE ESTATE AFORMENTIONED , **RICHARD DOUGLAS ISBELL** DULY ACKNOWLEDGED TO ME THAT HE EXECUTED THE SAME.

                NOTARY PUBLIC _____

2

# EXHIBIT "A"

COMMENCING AT A POINT EAST 405.0 FEET AND SOUTH 12 FEET FROM THE NORTHWEST CORNER OF LOT 15, BLOCK 22, 10 ACRE PLAT "A", BIG FIELD SURVEY, AND RUNNING THENCE SOUTH 160.26 FEET TO THE NORTH LINE OF A STREET KNOWN AS 3670 SOUTH STREET; THENCE EAST 74 FEET ALONG SAID STREET; THENCE NORTH 160.26 FEET, MORE OR LESS, TO A POINT DUE EAST OF THE POINT OF BEGINNING; THENCE WEST 74 FEET TO THE POINT OF BEGINNING.

SITUATE IN SALT LAKE COUNTY, STATE OF UTAH.

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

9904084
11/9/2006 12:29:00 PM $36.00
Book - 9378 Pg - 4698-4711
Gary W. Ott
Recorder, Salt Lake County, UT
INWEST TITLE SERVICES
BY: eCASH, DEPUTY - EF 14 P.

LOAN NUMBER: 0043816396

NOTE AMOUNT: $125,000.00

ASSESSOR'S PARCEL NUMBER:

FOR RECORDER'S USE ONLY

# DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $156,250.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
    (A)    **Security Instrument.** This Deed of Trust, which is dated **November 6, 2006**  will be called the "Security Instrument."

    (B)    **Borrower. DEBRA LEE ISBELL MATLOSZ,** ~~A MARRIED WOMAN~~ sometimes will be called "Borrower" and sometimes simply "I" or "me."

    (C)    **Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

    (D)    **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$125,000.00** ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay the debt in full by **November 15, 2036** .

    (E)    **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

    (F)    **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer

EX. E
P. 25

## II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)   The property which is located at **1247-1249 E SIERRA WAY, SALT LAKE CITY, UT 84106**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

EX. E
P 26

## COVENANTS

I promise and I agree with Lender as follows:

### 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

### 2.    PAYMENTS FOR TAXES AND INSURANCE

#### (A)  Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

#### (B)  Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency

EX. E
P. 27

3.    **APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

4.    **BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.    **BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required

discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**6.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5; above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

EX. E
P. 29

proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

## 10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
### (A)  Borrower's Obligations
Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

### (B)  Lender's Rights
Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

## 11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the Sums Secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

12.   MAXIMUM LOAN CHARGES

00433616396

**13.   LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **1247-1249 E SIERRA WAY, SALT LAKE CITY, UT 84106**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.   GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.   BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

EX. E
P. 31

**18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An **assignment** is a transfer of rights to another. I may have rights to bring legal action against